IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| | : |
| | : |
| v. | : No. 20-cr-014 (CKK) |
| | : |
| JAIRO ALDRES ALZATE MILAN, | : |
| | : |
| | : |
| *Defendant.* | : |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits its Memorandum in Aid of Sentencing. For the reasons set forth below, the United States respectfully requests that the Court impose a sentence of [] months' imprisonment, to be followed by [] years of supervised release.

**FACTUAL BACKGROUND**

1. On January 29, 2019, Jairo Aldres Alzate Milan, the Defendant, met with an individual to build a drug trafficking relationship. The Defendant discussed specifics with this individual who asked, "You know that cargo is going to the United States. All of it, yes?" The defendant answered, "Yes." The two also confirm a price given the added cost with transporting the "cargo" to the United States. The cargo was to be cocaine.

2. On February 2, 2019, the Defendant met again with the same individual. The Defendant and the individual discussed further details about the logistics of and the eventual transportation costs of shipping the cocaine to the United States, including details of cargo planes being used for the transportation. The individual explained that a plane in Santa Marta, Colombia, would be used to transport the cocaine first to Guatemala and then on to the United States. The individual further explained that he would need the details of the weight beforehand to ensure

custom manifest forms would match.

3.   On March 5, 2019, the Defendant met with the same individual. This time the two met in Cali, Colombia, and the interaction was again video/audio recorded. The Defendant told the individual that "had the 10" referring to 10 kg of cocaine. The Defendant confirmed he understood "this one is going to New York."

4.   Within a bag, the Defendant provided ten bricks of cocaine weighing roughly approximately 1kg each. The total amount of cocaine was 9.85 kgs. In exchange, the Defendant received 45 million Colombian Pesos, which was approximately $13,000 U.S. Dollars.

5.   The Drug Enforcement Administration Mid-Atlantic Laboratory tested 9 of the 10 units and confirmed in all 9 units the presence of Cocaine.

6.   In his plea, the Defendant admitted that he was responsible for distributing 9.85 kgs of cocaine and intended that amount to be imported into the United States.

## PROCEDURAL BACKGROUND

7.   On January 16, 2020, a federal grand jury empaneled in the District of Columbia returned a single-count Indictment charging Jairo Aldres Alzate Milan, also known as "Llorente" with Unlawful Distribution of 5 Kilograms or More of Cocaine for Importation into the United States, in violation of 21 USC §§ 959(a) and 960(b)(1)(B)(ii).

8.   On May 12, 2025, the United States Attorney for the District of Columbia filed a single-count Superseding Information charging Jairo Aldres Alzate Milan, also known as "Llorente" with Distribution of 500 Grams or More of Cocaine for Importation into the United States, in violation of 21 USC §§ 959(a) and 960(b)(2)(B)(ii).

7.   On May 13, 2025, the defendant pled guilty to the Superseding Information. Pursuant to the written plea agreement, the offense of conviction carries a mandatory minimum

term of imprisonment of 5 years and a maximum sentence of 40 years imprisonment; a fine not to exceed $5,000,000; and a term of supervised release of at least 4 years. The defendant also agreed to pay a special assessment of $100.

## I.     **LEGAL STANDARD**

Pursuant to 18 U.S.C. § 3553(a), the Court shall impose a sentence that is sufficient, but not greater than necessary, to "reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;" "to afford adequate deterrence to criminal conduct;" "to protect the public from further crimes of the defendant;" and to "provide the defendant with needed educational or vocational training." 18 U.S.C. § 3553(a)(2). In addition, the Court must also consider "the nature and circumstances of the offense and the history and characteristics of the defendant;" the types of sentences available, the Sentencing Guidelines; any pertinent policy statements; the need to avoid unwarranted sentence disparities; and the need to provide restitution to any victims. *Id.* § 3553(a).

The listed factors in 18 U.S.C. § 3553(a) include the following:

1) The nature and circumstances of the offense and the history and characteristics of the defendant;
2) the need for the sentence imposed –
    A) to reflect the serious of the offense, to promote respect for the law, and to provide just punishment for the offense;
    B) to afford adequate deterrence to criminal conduct;
    C) to protect the public from further crimes of the defendant; and
    D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
3) the kinds of sentences available;
4) the kinds of sentence and the sentencing range established for –
    A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines –
        i) issued by the Sentencing Commission . . . ; and
        ii) that . . . are in effect on the date the defendant is sentenced;
5) any pertinent policy statement –
    A) issued by the Sentencing Commission . . . and

   B) that . . . is in effect on the date the defendant is sentenced
6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
7) the need to provide restitution to any victims of the offense.

Procedurally, after calculating the applicable Guidelines range, the Court should next consider all the applicable factors set forth in 18 U.S.C. § 3553(a). Indeed, the Guidelines themselves are designed to calculate sentences in a way that implements the considerations relevant to sentencing as articulated in Section 3553(a). *Rita v. United States*, 551 U.S. 338, 348 (2007).

## II. GUIDELINES CALCULATION

The PSR correctly calculates the Defendant's Offense Level (25) and Criminal History Category (I). Draft PSR ¶¶ 62, 69. This calculation is based on the quantity of Cocaine that was the Defendant was responsible for. The Defendant further receives a Zero Point Adjustment based on his criminal history. However, the Defendant does not meet the requirements for a further Safety Valve reduction.

The Government has agreed to recommend and move for a reduction of three total offense levels for the Defendant's timely acceptance of responsibility, reducing the total offense level from 28 to 25.

The Defendant's Criminal History Category is I because the Defendant has no prior criminal history.

The Defendant's Guidelines range is therefore 57 to 71 months in prison, followed by a term of at least five years of supervised release. A 5-year mandatory minimum sentence also applies effectively making the Guidelines Range 60-71 months of incarceration.

## III. ARGUMENT

The Defendant's criminal conduct merits a significant sentence of 71 months. The

Government's request is borne out by the Section 3553(a) factors, discussed below.

### 1. The Nature, Circumstances, and Seriousness of the Offense

The dangerousness of the Defendant's crimes is self-evident: He attempted to supply almost ten kilos of cocaine to narcotics traffickers in the United States.

The Defendant's cocaine trafficking was not incidental or happenstance. He met with an individual with the specific intent of forming a relationship to traffic narcotics to the United States. He met with him repeatedly, worked out the logistics, set the price for their first shipment of cocaine and then provided the cocaine for shipment.

The nature of the Defendant's conduct demands a lengthy sentence.

### 2. The Defendant's History and Characteristics

The Defendant's lack of a criminal history makes his conduct here all the more alarming. Apparently without any previous criminal experience, with a steady job and a reliable paycheck, at 32 years old, the Defendant decided to become a cocaine trafficker and he picked the citizens of the United States as his targets. He did this sudden and random life change even thought he was raised in a "beautiful" and stable household with two apparently successful parents and two equally successful siblings. He, himself, had a model career rising to the level of, at the time of his arrest, Captain in the Colombian military and serving as the Operations Officer of a Border Counter-Intelligence Battalion earning roughly $1,240 a month.

And yet, here he is, having attempted to start a life of crime following all of the success and respect and love that he has enjoyed up until now.

### 3. The Need to Promote Respect for the Law and Deterrence

The Defendant's decision to begin drug dealing (assuming this is the beginning) should be deterred. Similarly, others who may also be drawn to a life of crime, or to continue one

A 71 month sentence is appropriate to promote respect for the law and deter future criminal behavior both by the defendant and by others. Deterring the defendant from committing this kind of crime again will protect the public from further crimes by him, so a 71 month sentence serves multiple purposes.

As to other considerations like substance abuse treatment and educational opportunities, these hardly seem relevant given the Defendant's career, family, and apparent lack of substance abuse or other medical or psychological issues. The real issues here, for this particular defendant, are a just punishment that suits the offense and deterrence.

### IV.   CONCLUSION

The Defendant's attempted international trafficking in cocaine and other factors discussed above all demonstrate the need for a 71-month sentence, to be followed by five years of supervised release. Such a sentence serves the interest of justice and appropriately balances the sentencing factors articulated under 18 U.S.C. § 3553(a).

Respectfully Submitted,

JEANINE FERRIS PIRRO
United States Attorney

By:   */s/ Adam L.D. Stempel*
Adam L.D. Stempel
Special Assistant United States Attorney
Peter V. Roman
Assistant United States Attorney